UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHARON MEEHAN,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     C.A. No. 19-560WES |
| QUICKEN LOANS, INC.,<br>    Defendant. | :<br>:<br>: |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

During a hearing held on June 15, 2021, the Court granted the motion of Defendant Quicken Loans, Inc., for a protective order barring Plaintiff from taking four depositions that she had noticed shortly before the fact discovery period closed. ECF No. 34 (granted by Text Order of June 15, 2021). Now pending before the Court is the motion of Plaintiff Sharon Meehan for reconsideration of that ruling. ECF No. 42. As grounds for seeking reconsideration, Plaintiff accuses defense counsel of providing the Court with "unknown documents & taped phone call" that were not served on her, leaving her with no opportunity to "refute these allegations," as well as of lying to the Court during the hearing. Id. at 1. For the reasons that follow, the motion for reconsideration is denied.

In connection with a request for reconsideration of a discovery motion, it is well-established that "[t]he granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Mauti v. Scuncio, C.A. No. 08-054S, 2010 WL 11519588, at *1 (D.R.I. May 25, 2010) (alteration in original) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)). "Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing

theories previously advanced and rejected." Palmer, 465 F.3d at 30; see also Waters v. Walt Disney World Co., 237 F. Supp. 2d 162, 167 (D.R.I. 2002) (denying motion for reconsideration on grounds that it simply restated arguments already made to court). To succeed on a motion for reconsideration, a movant "must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Mauti, 2010 WL 11519588, at *1 (quoting Palmer, 465 F.3d at 30). Generously read in light of her *pro se* status, Plaintiff's motion appears to be based on her belief that the Court's ruling rested on a misapprehension of some material fact because of deceptive tactics used by defense counsel.

Beginning with Plaintiff's assertion that she was not served with the documents and sound recordings on which the Court relied in making its ruling, the Court finds that the argument is baseless. With one exception,[1] everything that the Court relied upon in making its ruling on the motion for protective order (and the related motion to extend the fact discovery period) was publicly filed in or openly referenced in the docket of the case. Defendant has presented solid evidence that all of it was served on Plaintiff both by email and U.S. mail. Further, Defendant's arguments are clearly set out in the documentary filings (ECF Nos. 33, 34-1) that Plaintiff does not deny she received; confirming that she got these filings are her multiple filings in response. ECF Nos. 35, 38, 39, 41. And Plaintiff could have accessed the public docket if she had had any reason not to trust the completeness of her service copies.

---

[1] The exception is the Court's *sua sponte* discovery of Mr. Williamson's 2016 criminal history based on a reference in one of Plaintiff's filings. It is discussed *infra*.

Plaintiff specifically complains that two sound recordings attached as Exhibits H and I to the MacLeman Declaration, ECF No. 34-2,[2] were never produced to her during the discovery period and were deceptively provided to the Court, but not to her, for the hearing. This appears to be simply not true – Defendant has presented documents sufficient to demonstrate that these and other sound recordings were produced with discovery served on April 23, 2021, ECF No. 34-9, and that these specific recordings were served again with the MacLeman Declaration on May 24, 2021. ECF No. 45-2 at 4. Further, Defendant's filings in connection with its motion for protective order openly and expressly describe these Exhibits as "recording[s] of a voicemail[s] that Roger Williamson left" in May and August 2017, including the advisory that they had previously been produced in discovery on April 23, 2021. ECF No. 34-1 at 5, 16 n.11, 17 n.13; ECF No. 34-2 ¶¶ 9-10; ECF No. 34-9. Thus, there was no mystery that Defendant was relying on these recordings in its motion for protective order seeking to bar Plaintiff from deposing the recipients of the voicemail messages. More fundamentally, Plaintiff has failed to present any explanation for how the Court's ruling was based on misapprehension of a material fact arising from the Court's having listened to these sound recordings.[3] Specifically, she argues that

---

[2] For these exhibits to the MacLeman Declaration, the CM/ECF docket contains the Declaration that describes them, with cover sheets indicating they were filed "manually." ECF Nos. 34-2 ¶¶ 9-10; 34-10; 34-11. A CD with the two exhibits was mailed to the Clerk's Office. That CD was provided to Chambers prior to the hearing on the motion for protective order; once the hearing was concluded, the CD was returned to the Clerk's Office, as reflected in the docket.

[3] These sound recordings, MacLeman Decl. Exs. H & I (ECF Nos. 34-10, 11), were part of what the Court considered in ruling that Plaintiff's noticing of the depositions of Messrs. Gilbert and Emerson appeared to be an attempt to take apex depositions for the purpose of harassment. See Hearing Transcript (ECF No. 48) at 4-5. The recordings demonstrate that Plaintiff's argument that these are witnesses with relevant information because they had been in communication with Roger Williamson, Plaintiff's husband, was contrived. The first of the two recordings (left for Mr. Emerson) reflects a man who identifies himself as "Roger and Sharon Meehan calling," and references a demand for compensation "for Sharon" from Defendant based on an alleged wrongful release of personal information and other vague references to a "big screw-up" by Quicken in connection with the mortgage; nothing on the recording appears to relate to the claim in the complaint in this case. The second – apparently the only communication between Plaintiff or her husband and this potential witness (Mr. Gilbert) – is punctuated by foul ("I hope you eat a bad cheeseburger or hot dog and you just croak of a heart attack") and profane language based on the caller's rage at Defendant's having "reneged" on the promise to pay the compensation mentioned in the first

3

reconsideration is required because she "had no chance to refute these allegations," ECF No. 42 at 1, yet she has failed to advise the Court what, if afforded such a chance, she might argue.

Plaintiff's remaining arguments may be given short shrift.  Her motion accuses Defendant's counsel of telling "outright lie[s]."  Id.  The Court has painstakingly slogged through each accusation, to which Defendant has been required painstakingly to respond; not one has substance.  The Court is further troubled by the pattern that seems to be emerging: Plaintiff directs hyperbolic accusations[4] at defense counsel, who is required to respond, followed by the Court's investing substantial judicial resources to find that the accusations do not withstand scrutiny.  E.g., ECF No. 30 at 1-2 (accusation that defense counsel "ridiculed and maligned" Plaintiff rejected based on finding that counsel's communications "were appropriate and professional"); Hearing Transcript (ECF No. 48) at 17 ("She's a liar.").  Based on Plaintiff's conduct, Defendant has taken the unusual step of asking the Court to award Fed. R. Civ. P. 11 sanctions against a *pro se* litigant.  See Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc., 498 U.S. 533, 564 (1991); see Obert v. Republic W. Ins. Co., 264 F. Supp. 2d 106, 121 (D.R.I. 2003).  The Court is not yet prepared to issue a Fed. R. Civ. P. 11 show cause order; however, Plaintiff is cautioned that Defendant is free to raise Fed. R. Civ. P. 11 again if this troubling pattern continues.

Also during the hearing on June 15, 2021, the Court denied Plaintiff's motion (ECF No. 33) to extend the fact discovery deadline.  Text Order of June 15, 2021; Hearing Transcript (ECF

---

recording; it too is totally irrelevant to the issues in the complaint in this case.  Plaintiff has not disputed Defendant's representation that the voice on both recordings is that of Mr. Williamson.

[4] In addition to the attacks Plaintiff has placed on the public record regarding defense counsel's character, Plaintiff apparently has also made even more vicious *ad hominem* attacks privately.  To illustrate, defense counsel filed with the opposition to the motion for reconsideration an email sent to her by Plaintiff following the hearing on June 15, 2021.  ECF No. 45-1 at 2.  It is acrimonious and utterly inappropriate.

No. 48) at 18. While Plaintiff's motion for reconsideration is hard to understand, it does not appear that she has moved for reconsideration of that Order. However, if she intended to include the denial of her motion to extend fact discovery in her motion to reconsider, that aspect of the motion for reconsideration is also denied.

In brief, the Court found that during the more than six-month-long period of fact discovery, ECF No. 22, Plaintiff pursued and obtained significant discovery, knew that she needed to notice depositions if she wanted to take them, had been aware of the four witnesses who were the subject of the protective order since before the case was filed, yet she did not notice their depositions until two business days before they were supposed to occur and seven business days before the close of fact discovery. In ruling on the motion for protective order (and relied on in denying the motion to extend), the Court further found that this remaining discovery was, as to two of the depositions, noticed solely for the purpose of harassment, while the other two were either totally irrelevant (as to one) or peripherally relevant and disproportional to the needs of the case (as to the other). See Hearing Transcript (ECF No. 48) at 4-5. Mindful of her *pro se* status, the Court also scrutinized the claims in Plaintiff's complaint and carefully considered whether Plaintiff's arguments suggest that she might need any other discovery beyond the four depositions actually noticed. Before finding that she did not, the Court questioned Plaintiff about her claims; importantly, she was unable to articulate what she contends happened and how such events caused her any damage. See id. at 11-14. Instead, she made vague allegations of fraud and document alteration that had no relationship to what is in her pleading,[5] resulting in the Court's finding that she had not come close to demonstrating that

---

[5] This was not the first time that I asked Plaintiff to explain her claims so that I could understand how they are even plausible. Over the course of multiple hearings and conferences that I have conducted in this case, I have repeatedly given Plaintiff an opportunity to do so and observed her words and her demeanor as she responded; over the course

5

any other discovery was needed regarding the claims actually contained in her complaint. See id. at 11-14, 18. The Court further relied on the Text Order of September 14, 2020, which holds that the pleading would survive Defendant's motion to dismiss based on Plaintiff's *pro se* status, but that its plausibility would be revisited at summary judgment. The Court concluded that the motion to extend appeared to have been propounded for the purpose of delaying the filing of such a motion.

Ultimately, Plaintiff's motion to extend was denied because Plaintiff failed to establish good cause to extend the pretrial fact discovery period. Because the Court's reasons for granting the protective order also form part of the foundation for this ruling denying the motion to extend, with no basis for reconsideration of the granting of the motion for protective order, there also is no basis to reconsider the denial of the motion to extend fact discovery.

A coda: Plaintiff's motion for reconsideration adverts to the Court's *sua sponte* discovery – triggered by an attachment to Plaintiff's opposition to the motion for protective order – of the public record of the Commonwealth of Massachusetts, which reveals that, in 2016, the same period when Plaintiff has repeatedly represented to this Court that Mr. Williamson was involved in a myriad of ways in all aspects of matters related to this case, he was charged with and ultimately pled guilty to twenty-three charges, including fraudulent securities sales, larceny, witness intimidation, identity fraud, forgery, money laundering, publishing false financial statements and being a common and notorious thief. See Commonwealth v. Williamson, 1577CR00635 (Mass. Super. Ct., Essex Cty.) (docket). On October 28, 2016, Mr. Williamson was sentenced to a time-served term of incarceration of 275 days and to three years of probation. See id. In addition to standard conditions, he was made subject to the condition that he "shall not

---

of many such hearings and conferences, I have found that her responses were vague, hyperbolic and ungrounded in what is in her pleading.

abide by any other name other than his true name Roger Williamson during the term of probation."⁶ See id.  The 2017 voicemail recording left for Mr. Emerson, in which he identified himself as "Roger and Sharon Meehan calling," was left only seven months later; the Court considered this as part of the foundation for the finding that two of the depositions Plaintiff wanted to take were sought for harassment.⁷  Importantly (considering Plaintiff's accusations of deception by defense counsel), nothing filed by Defendant – at least as far as the Court is aware – has ever referenced Mr. Williamson's criminal history.

Plaintiff's motion for reconsideration (ECF No. 42) is denied.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 7, 2021

---

⁶ Another special condition imposed on Mr. Williamson was that he was required to "make a good faith effort to remove any online postings regarding intimidation or harassment charges."  Based on the Massachusetts public record, Mr. Williamson was released from probation on December 30, 2019.  See Commonwealth v. Williamson, 1577CR00635 (Mass. Super. Ct., Essex Cty.) (docket).

⁷ To be clear, in opposing the motion for protective order, Plaintiff had argued that Mr. Emerson is a relevant witness because of his contact with Mr. Williamson, including the voicemail left for Mr. Emerson by Mr. Williamson.  ECF No. 38 at 10.  The voicemail recording proffered to the Court by Defendant belies this argument.  It reveals that Mr. Emerson was being drawn in not by anything related to Plaintiff's complaint, but by Mr. Williamson's demand for compensation regarding an unrelated claim, as well as the troubling possibility that Mr. Williamson's conduct may have been in violation of a probation condition imposed following his conviction for having committed fraud, among other crimes.  Plaintiff has presented nothing to suggest that these findings are based on a "misapprehension" of fact or law.  The Court notes that it has made no finding regarding the merit of the unrelated claim for compensation that Mr. Williamson spoke about during the recording; what mattered to the Court is that this claim is not related to the issues in Plaintiff's complaint.